# EDWARD D. WILLIE AND ANOTHER, INDIVIDUALLY AND AS NATURAL GUARDIANS OF JANET ANN WILLIE, AND OTHERS v. INDEPENDENT SCHOOL DISTRICT NO. 709.

231 N. W. 2d 272.

June 13, 1975—No. 44660.

*Gerald C. Martin,* Legal Aid Service of Duluth, Inc., for appellants.

*Robert A. Hughes,* for respondent.

*R. Michael Wetherbee,* for Minnesota Civil Liberties Union, amicus curiae, seeking reversal.

*Peter S. Popovich* and *Ivars J. Krafts,* for Minnesota School Boards Association, amicus curiae, seeking affirmance.

OTIS, JUSTICE.

This is an action, brought by the parents of children attending school in defendant school district, seeking a declaratory judgment that compulsory fees charged by the school district were unconstitutional. Plaintiffs prayed for an injunction prohibiting the school district from further assessing such fees. The trial court granted defendant's motion for summary judgment, holding that neither the Federal Constitution, the Minnesota Consti-

tution, nor the statutes of Minnesota prohibit school districts from exacting fees for a variety of curricular and extracurricular activities.

Because there is no record for us to review, and we are satisfied that serious constitutional questions which have been raised cannot be resolved without a full trial on the merits, we remand for further proceedings in the trial court.

Plaintiffs allege that their children and others similarly situated are charged compulsory fees by the school attended by their children for such necessary materials and equipment as towels, gym shoes, workbooks, musical instruments, acrylic paints, shop materials, crayons, fabrics, and pencils. Plaintiffs assert that such charges violated Minn. Const. art. 8, §§ 1 and 2,[1] as well as U. S. Const. Amend. XIV, § 1, and Minn. St. 120.06 and 123.35.

The trial court's order was issued August 27, 1973, and plaintiffs' appeal was taken in September 1973. In March 1974, L. 1974, c. 561, §§ 2, 3, and 4, now Minn. St. 120.72, 120.73, and 120.74, were adopted by the legislature and on April 11, 1974, were approved by the governor, to take effect July 1, 1975.[2] Be-

---

[1] Since amendment adopted November 5, 1974, Minn. Const. art. 13, § 1.

[2] Minn. St. 120.72 provides as follows: "It is the policy of the state of Minnesota that public school education shall be free and no pupil shall be denied an education because of economic inability to furnish educational books and supplies necessary to complete educational requirements necessary for graduation. Any practice leading to suspension, coercion, exclusion, withholding of grades or diplomas, or discriminatory action based upon nonpayment of fees denies pupils their right to equal protection and entitled privileges. It is recognized that school boards do have the right to accept voluntary contributions and to make certain charges and to establish fees in areas considered extra curricular, noncurricular or supplementary to the requirements for the successful completion of a class or educational program. No public school board may require, except as authorized by sections 120.73 and 120.75, the payment of fees."

Minn. St. 120.73 provides as follows: "Subdivision 1. A school board

cause the statute will render moot many of the issues raised by the plaintiffs, we decline to consider serious constitutional questions.

---

is authorized to require payment of fees in the following areas:

"(a)  In any program where the resultant product, in excess of minimum requirements and at the pupil's option, becomes the personal property of the pupil;

"(b)  Admission fees or charges for extra curricular activities, where attendance is optional;

"(c)  A security deposit for the return of materials, supplies, or equipment;

"(d)  Personal physical education and athletic equipment and apparel, although any pupil may provide his own if it meets reasonable requirements and standards relating to health and safety established by the school board;

"(e)  Items of personal use or products which a student may purchase at his own option such as student publications, class rings, annuals, and graduation announcements;

"(f)  Fees specifically permitted by any other statute;

"(g)  Field trips considered supplementary to a district educational program;

"(h)  Any authorized voluntary student health and accident benefit plan;

"(i)  For the use of musical instruments owned or rented by the district, a reasonable rental fee not to exceed either the rental cost to the district or the annual depreciation plus the actual annual maintenance cost for each instrument.

"Subd. 2.  Students may be required to furnish personal or consumable items including pencils, paper, pens, erasers and notebooks.

"Subd. 3.  Sections 120.71 to 120.76 shall not preclude the operation of a school store wherein pupils may purchase school supplies and materials.

"Subd. 4.  A school board may waive any such deposit or fee if any pupil or his parent or guardian is unable to pay it."

Minn. St. 120.74 provides as follows: "Subdivision 1.  A school board is not authorized to charge fees in the following areas:

"(a)  Textbooks, workbooks, art materials, laboratory supplies, towels;

"(b)  Supplies necessary for participation in any instructional course

Although plaintiffs seek to bring a class action on behalf of all indigent parents, the trial court expressly held, "The court does not find any evidence that the plaintiffs are financially unable to pay the fees." We consequently have difficulty recognizing plaintiffs' standing to invoke the rights of the indigent parents they purport to represent. An equally serious impediment to a consideration on the merits is the fact that neither plaintiffs nor respondent advance the claims of parents who are not indigent. If we were to pass on the rights of indigent parents only, it would leave unresolved the question of whether the parents who can afford to pay could constitutionally be required to do so.

Neither the attorney general nor the Department of Education has been given an opportunity to be heard in these proceedings, let alone introduce evidence. On remand they would seem to us to be proper, if not necessary, parties.

Nor do we have any way of determining the actual operation of the permissible policy prescribed by statute allowing school

except as authorized in sections 120.73 and 120.75;

"(c)  Field trips which are required as a part of a basic education program or course;

"(d)  Graduation caps, gowns, any specific form of dress necessary for any educational program, and diplomas;

"(e)  Instructional costs for necessary school personnel employed in any course or educational program required for graduation;

"(f)  Library books required to be utilized for any educational course or program;

"(g)  Admission fees, dues, or fees for any activity the pupil is required to attend;

"(h)  Any admission or examination cost for any required educational course or program;

"(i)  Locker rentals.

"Subd. 2.  No pupil's rights or privileges, including the receipt of grades or diplomas may be denied or abridged for nonpayment of fees; but this provision shall not prohibit a school district from maintaining any action provided by law for the collection of such fees authorized by sections 120.73 and 120.75."

boards to waive the payment of fees for indigent pupils. Indeed, no party to these proceedings has shown he has been denied access to any curricular or extracurricular activity because of his refusal or inability to pay the prescribed fee.

Accordingly, we hold that the decision below was in effect rendered as an advisory opinion without a determination of what practices are actually followed under current regulations. This is a matter peculiarly within the expertise of the Department of Education, and neither this court nor the trial court can intelligently determine what fees are permissible and what are not without a full-blown hearing where school administrators, teachers, and parents have an opportunity to introduce evidence bearing on these constitutional questions. In the light of the imminent effective date of the new statutes, it would seem to us advisable that further proceedings be deferred in the trial court until new regulations and procedures have been adopted by school administrators in response to the authority granted them by the legislature in L. 1974, c. 561. The judgment of the trial court is therefore vacated, and the matter is remanded for further proceedings consistent with the conclusions we here reach.

